IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REVA WARREN,

        Plaintiff,

vs.                                                                         Civil No.   13-cv-565-DRH-CJP

COMMISSIONER of SOCIAL
SECURITY,

        Defendant.

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Reva Warren is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Warren applied for benefits in October, 2009, alleging disability beginning on December 12, 2008. (Tr. 19). After holding a hearing, ALJ Mary Ann Poulose denied the application for benefits in a decision dated January 4, 2012. (Tr. 19-27). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 8).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises only one issue:

1. The ALJ erred in not limiting plaintiff to only occasional forward reaching in her written decision.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[1] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).

"Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For the purposes of this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.
.

404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Warren was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Poulose followed the five-step analytical framework described above.

She determined that Ms. Warren had not been engaged in substantial gainful activity since the alleged onset date. She further determined that she had severe impairments of degenerative joint disease of the lumbar spine and hip bursitis, which did not meet or equal a listed impairment.

The ALJ found that Ms. Warren had the residual functional capacity to perform work at the sedentary exertional level, with a number of limitations. Relying upon the testimony of a vocational expert, the ALJ found that Ms. Warren was able to do jobs which exist in significant numbers in the national and local economies.

### The Evidentiary Record

The Court has considered the entire evidentiary record in formulating this Memorandum and Order. In view of the narrow point raised by plaintiff, a brief review of the administrative record will suffice.

**1.    Medical Records**

Ms. Warren began having back pain radiating down her right leg after she was hit by a machine pulling shopping carts on a Wal-Mart parking lot on December 12, 2008. (Tr. 238). She first tried chiropractic treatment. (Tr. 192-230). Plaintiff also saw her primary care physician, Dr. Dennon Davis. (Tr. 259-411). Dr. Davis referred her to a pain management specialist, who gave her a series of epidural steroid injections. (Tr. 242-258, 424-425).

In March, 2010, plaintiff told Dr. Davis that the injections had not helped.

The pain management doctor "said they were done" and she should return to her primary care physician. Dr. Davis noted positive straight leg raising and weakness in the right leg. He indicated he would refer her to a neurosurgeon. (Tr. 546-547).

Dr. Sonjay Fonn, a neurosurgeon, saw Ms. Warren in January, 2011, and diagnosed herniated discs at L4-5 and L5-S1. (Tr. 467-468). Dr. Fonn operated on March 14, 2011. The surgery consisted of laminectomy with decompression of the nerve root and fusion at L4-5 and L5-S1. (Tr. 442-443). Four weeks later, Dr. Fonn noted that she was "progressing very well" and her pre-operative symptoms had significantly resolved. (Tr. 438).

2. **Treating Doctor's Opinion**

Dr. Davis completed a form entitled "Medical Source Statement of Ability to Do Work-Related Activities" in November, 2011. The section entitled "Manipulative Limitations" on page 2 of the form is most relevant here. The form asked, "Are the following MANIPULATIVE functions affected by the impairment?" The first function listed was "Reaching all directions (including overhead)." Dr. Davis checked "limited" for that function. The next question asked the doctor to rate how often the patient could perform specified manipulative functions. The first function was "reaching." The form did not differentiate between overhead reaching and forward reaching. Dr. Davis indicated that Ms. Warren could reach occasionally. In his handwritten note explaining how the function was impaired,

Dr. Davis wrote, "unable to reach overhead due to back pain or lift or carry anything out in front of her."  (Tr. 613).

### 3.     **Evidentiary Hearing**

A vocational expert (VE) testified at the hearing.  The ALJ asked her to assume a person who could do work at the light exertional level that did not "involve any kind of climbing, falling,[2] kneeling, or crouching, squatting, overhead or forward reaching. And only occasional stooping."  (Tr. 54).

The VE asked for clarification of the hypothetical question:

> [VE]   Did you say overhead or –
>
> [ALJ] Or forward.  Yeah.  That's actually [inaudible].
>
> [VE]   And none whatsoever?
>
> [ALJ] Yeah.
>
> [VE]   Okay.  There [sic] would not allow for any of the past relevant work.  And actually, it would reduce her to sedentary.

(Tr. 55).

The ALJ then asked the VE whether there were jobs at the sedentary level that the hypothetical individual could do.  She testified that the person could do the jobs of document preparer, addressor and circuit board assembler.  If a sit/stand option were added, she could still do those jobs.  (Tr. 55).

### Analysis

Plaintiff's sole point focuses on a discrepancy between the hypothetical

---

[2] The ALJ most likely said "crawling," rather than "falling."

question asked of the VE and her written RFC assessment. In her written decision, the ALJ concluded that plaintiff had the RFC to do sedentary work with the following limitations:

> no climbing, crawling, kneeling, crouching, squatting, overhead reaching, or floor-level reaching, and only occasional stooping. The claimant requires sit/stand option at will.

(Tr. 23).

ALJ Poulose accepted Dr. Davis' opinions as to plaintiff's limitations, except for his opinion regarding environmental hazards. (Tr. 25). The parties expend some energy in their briefs analyzing whether the form completed by Dr. Davis actually contained the opinion that Ms. Warren was limited in "forward reaching," as opposed to "overhead reaching." The Court finds it unnecessary to address this question. The hypothetical question posed to the VE included the limitation of no overhead or forward reaching. It is clear that the VE understood the assumption to be no overhead or forward reaching – "none whatsoever." (Tr. 55). Therefore, the exact nature of Dr. Davis' opinion is irrelevant.

Plaintiff admits at page 6 of her brief that "The ALJ asked Bose [the VE] to find work that did not involve any climbing, falling [sic], kneeling, crouching, squatting, overhead or forward reaching, and only occasional stooping." Curiously, at page 10 of her brief, she makes the opposite argument: "The hypothetical the ALJ posed to the vocational expert eliminated jobs that require overhead and floor level reaching. Therefore, the only jobs the vocational expert

Page **8** of **10**

could reasonably reference were those that require forward reaching." Plaintiff is incorrect. The ALJ clearly asked the VE to assume "no overhead or forward reaching." (Tr. 55). Therefore, plaintiff's argument that the hypothetical question did not include all of her limitations fails.

The only possible argument open to plaintiff is that the ALJ erred in not including all of her limitations in her written RFC assessment. She is correct. However, any error in this regard is harmless.

The doctrine of harmless error applies in judicial review of administrative proceedings. "If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Where the record indicates that "no reasonable ALJ would reach a contrary decision," the error is harmless and remand is not required. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Remand is not required here because no reasonable ALJ would conclude that Ms. Warren is disabled on this record. ALJ Poulose accepted the opinion of plaintiff's treating doctor as to her limitations. In fact, the ALJ's hypothetical question was even more restrictive than Dr. Davis' opinion. Dr. Davis limited plaintiff to *occasional* reaching, while the hypothetical question assumed *no* overhead or forward reaching at all. Even under that restrictive scenario, the VE

Page **9** of **10**

testified that there were jobs that the hypothetical person could perform. Given the VE's testimony, any reasonable ALJ would deny plaintiff's application.

## Conclusion

The Commissioner's final decision denying Reva Warren's application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

Signed this 21st day of January, 2014.

Digitally signed by David R. Herndon
Date: 2014.01.21 15:02:40 -06'00'

**Chief Judge
U.S. District Court**